IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

JUICEME, LLC, an Arizona
limited liability company;
JUICEME, I, LLC, an Arizona
limited liability company;
JUICEME, II, LLC, an Arizona
limited liability company;
JUICEME, III, LLC, an Arizona
limited liability company;
JUICEME, IV, LLC, an Arizona
limited liability company;
MIKE NEILL, an individual; and
PHI NGUYEN, an individual,

        Plaintiffs,

v.

BOOSTER JUICE LIMITED PARTNERSHIP
dba BOOSTER JUICE; AW LIMITED
PARTNERSHIP, an Oregon limited
partnership; AW HOLDINGS, INC.,
a Nevada corporation; AW HOLDINGS
CORPORATION dba BOOSTER JUICE,
an Alberta, Canada corporation;
DALE WISHEWAN, individually and
in his official capacity; JONATHAN
AMAK, individually and in his
official capacity; and DOES 1-5,

        Defendants.

09-CV-1506-BR

OPINION AND ORDER

1 - OPINION AND ORDER

**PHILIP S. VAN DER WEELE**
K&L Gates LLP
222 S.W. Columbia Street
Suite 1400
Portland, OR 97201-6632
(503)228-3200

**JAMES MULCAHY**
Mulcahy LLP
One Park Plaza, Suite 225
Irvine, CA 92843
(949) 252-9377

        Attorneys for Plaintiffs

**ROBERT A. SHLACHTER**
**KEIL M. MUELLER**
**TIMOTHY S. DEJONG**
Stoll Stoll Berne Lokting & Shlachter, PC
209 S.W. Oak Street
Suite 500
Portland, OR 97204
(503) 227-1600

        Attorneys for Defendants Booster Juice Limited
        Partnership; AW Limited Partnership; AW Holdings,
        Inc.; and Jonathan Amack

**JOHN A. SCHWIMMER**
**ELIZABETH A. SEMLER**
Sussman Shank, LLP
1000 S.W. Broadway
Suite 1400
Portland, OR 97205
(503) 227-1111

        Attorneys for AW Holdings Corp. and Dale Wishewan

**BROWN, Judge.**

This matter comes before the Court on the Motion (#29) to
Dismiss filed by Defendants AW Holdings Corporation (AWHC) and
Dale Wishewan and the Motion (#31) to Dismiss filed by Booster

2 - OPINION AND ORDER

Juice Limited Partnership (BJLP); AW Limited Partnership (AWLP);
AW Holdings, Inc. (AWHI); and Jonathan Amack.  BJLP, AWLP, AWHI,
and Amack are hereafter referred to collectively as US Defendants
and AWHC and Wishewan as Canada Defendants.

On April 9, 2010, the Court heard oral argument and
permitted the parties to file supplemental briefs no later than
April 30, 2010, at which time the Court took the matter under
advisement.

For the reasons that follow, the Court **DENIES** both Motions
to Dismiss and **STAYS** this matter pending arbitration.

<u>**BACKGROUND**</u>

In 1999 Defendants Dale Wishewan and Jonathan Amack formed
AWHC, a Canadian corporation with its principal place of business
in Edmonton, Alberta, Canada.  Wishewan and Amack formed AWHC for
the purpose of franchising a "juice and smoothie bar concept"
under the brand name "Booster Juice" in Canada.  Booster Juice is
a successful franchise in Canada.

In 2003 Wishewan and Amack decided to expand the Booster
Juice franchise operation to the United States and formed AWHI, a
Nevada corporation, for that purpose.  Wishewan and Amack each
own 50% of the stock of AWHI.

To facilitate the franchise process in the United States,
Wishewan and Amack also formed BJLP, an Oregon corporation.  AWHI

owns 1% of BJLP, and Wishwan and Amack own the remaining 99% equally.

On March 1, 2005, Plaintiffs Mike Neill and Phi Nguyen entered into a Regional Development Agreement (RDA) and a Franchise Agreement (FA) with BJLP.  Subsequently Neill and Nguyen entered into additional FAs with BJLP.  Neill and Nguyen assigned the various FAs to Plaintiffs Juiceme, LLC; Juiceme I, LLC; Juiceme II, LLC; Juiceme III, LLC; and Juiceme IV, LLC.

The RDA contains the following arbitration clause:

> [BJLP] and Regional Developer agree that, except for controversies, disputes, or claims related to or based on use of the Marks or the enforcement of non-competition provisions, . . . all contro-versies, disputes, or claims between [BJLP] and [its] affiliates, and Regional Developer's [*sic*] and its affiliates' respective shareholders, officers, directors, agents, and/or employees, and Regional Developer (and/or its owners, guarantors, affiliates, and/or employees) arising out of or related to:  (1) this Agreement or any other agreement between Regional Developer and [BJLP]; (2) [BJLP's] relationship with Regional Developer; or (3) the validity of this Agreement or any other agreement between Regional Developer and [BJLP]; must be submitted for binding arbitration to the American Arbitration Association. . . .  All matters relating to arbitration will be governed by the Federal Arbitration Act (9 U.S.C. §§ 1 et seq.).

First Am. Compl., Ex. 1 at ¶ 14.  The FAs include the following arbitration clause:

> Except for claims or controversies, disputes or claims related to or based on the Marks, . . . upon demand of either party, all controversies, disputes or claims between [BJLP], its subsidiaries and affiliated companies[,] their

shareholders, officers, directors, agents, employees and attorneys (in their representative capacities) and Franchisee (and its owners and guarantors, if applicable) shall be submitted for arbitration to the Oregon office of the American Arbitration Association (AAA).

* * *

The award and decision of the arbitrators shall be final, conclusive and binding upon all parties hereto and judgment upon the award may be entered in any court of competent jurisdiction.

First Am. Compl., Ex. 2 at ¶ 20.01.

In January 2008 Plaintiffs and other regional developers and franchisees of BJLP commenced a consolidated arbitration proceeding against US Defendants with the AAA.

On February 13, 2008, Plaintiffs filed a First Amended Demand before the AAA in which they added Canada Defendants as parties to the arbitration. Because the RDA and FAs include provisions that prohibit consolidated arbitration proceedings, Plaintiffs filed an individual arbitration demand against the US and Canada Defendants in July 2008.

The RDA and the FAs do not contain provisions for payment of arbitration costs. Nevertheless, Plaintiffs and Defendants agreed orally in August 2008 that the costs of the arbitration would be paid 1/3 by Plaintiffs, 1/3 by US Defendants, and 1/3 by Canada Defendants. The parties' agreement was subsequently confirmed via email.

In May 2009 Plaintiffs filed a Third Amended Demand before

the AAA.  Between May and December 2009, the parties engaged in document discovery and took several depositions as part of the arbitration.

By November 2009 US Defendants owed approximately $58,007 in arbitration fees and costs for the arbitration proceeding, which they were scheduled to pay over a ten-week period beginning November 24, 2009, and ending February 4, 2010.  On November 24, 2009, Amack informed the AAA that US Defendants could not afford to pay their share of the arbitration fees and costs.

On November 25, 2009, the AAA notified Plaintiffs and Canada Defendants that US Defendants were not able to pay their share of the fees and costs and requested Plaintiffs and Canada Defendants to advise the AAA whether either of them were willing to pay US Defendants' share.

On November 25, 2009, Canada Defendants advised the AAA that they were not willing to pay US Defendants' share.  On November 30, 2009, Plaintiffs requested an extension of time to December 21, 2009, to determine whether they would pay US Defendants' share.  On December 10, 2009, the AAA set a deadline of December 18, 2009, for Plaintiffs to advise whether they would pay US Defendants' share.  Plaintiffs did not notify the AAA by December 18, 2009.

On December 22, 2009, the AAA case administrator advised the parties that in light of Plaintiffs' failure to notify the AAA of

their decision by the deadline, he would "inform the panel that
we are not fully funded to proceed with these matters.  At that
time[,] the panel may make an appropriate order."

On December 28, 2009, Plaintiffs filed an action and a
Motion for a Temporary Restraining Order (TRO) in this Court
against US and Canada Defendants bringing claims for injunctive
relief and for breach of the arbitration clause.  Plaintiffs
sought an order requiring US and Canada Defendants to proceed to
trial in this Court on the claims that had been taken to
arbitration.

On December 28, 2009, the Court heard oral argument and
denied Plaintiffs' Motion for a TRO.

On February 3, 2010, the AAA panel issued an order
terminating the arbitration proceeding effective February 10,
2010, unless the arbitration was fully funded by that time.  None
of the parties paid the amounts due by February 10, 2010, and the
panel terminated the arbitration.

On February 16, 2010, Plaintiffs filed a First Amended
Complaint in this Court against US and Canada Defendants for
(1) violation of the Oregon Franchise Act, Oregon Revised
Statutes §§ 650.020, *et seq.*; (2) intentional misrepresentation;
(3) negligent misrepresentation; (4) false promise;
(5) fraudulent suppression of fact; (6) unfair business
practices, Oregon Revised Statute § 646.638; (7) breach of

contract – regional development agreements; (8) breach of contract – franchise agreements; (9) breach of the covenant of good faith and fair dealing; (10) breach of contract – rescission of Regional Development Agreements and restitution; (11) breach of contract – rescission of Franchise Agreements and restitution; (12) indemnification of obligations of Plaintiffs under lease; and (13) breach of contract – payment of arbitration costs.

On March 5, 2010, US and Canada Defendants filed Motions to Dismiss this matter for lack of jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).


## STANDARDS

### I.   Motion to Dismiss under 12(b)(1)

When deciding a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the court may consider affidavits and other evidence supporting or attacking the complaint's jurisdictional allegations. *Autery v. U.S.*, 424 F.3d 944, 956 (9th Cir. 2005).  The court may permit discovery to determine whether it has jurisdiction. *Data Disc, Inc. v. Sys. Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).  The court has broad discretion in granting discovery and may narrowly define the limits of such discovery.  *Id.*

When the court "receives only written submissions, the

8 - OPINION AND ORDER

plaintiff need only make a *prima facie* showing of jurisdiction."
*Rio Props., Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1019 (9th
Cir. 2002).

Plaintiffs have the burden to establish that the court has
subject-matter jurisdiction. *Ass'n of Am. Med. Coll. v. United
States*, 217 F.3d 770 (9th Cir. 2000).

## II.  Motion to Dismiss under 12(b)(6)

> To survive a motion to dismiss, a complaint must
> contain sufficient factual matter, accepted as
> true, to "state a claim to relief that is
> plausible on its face." [*Bell Atlantic v.
> Twombly*, 550 U.S. 554,] 570, 127 S. Ct. 1955.  A
> claim has facial plausibility when the plaintiff
> pleads factual content that allows the court to
> draw the reasonable inference that the defendant
> is liable for the misconduct alleged. *Id.* at 556
> . . . .  The plausibility standard is not akin to
> a "probability requirement," but it asks for more
> than a sheer possibility that a defendant has
> acted unlawfully. *Ibid.*  Where a complaint pleads
> facts that are "merely consistent with" a
> defendant's liability, it "stops short of the line
> between possibility and plausibility of
> 'entitlement to relief.'" *Id.* at 557, 127 S. Ct.
> 1955 (brackets omitted).

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  *See also Bell
Atlantic v. Twombly*, 550 U.S. 554, 555-56 (2007).  The court must
accept as true the allegations in the complaint and construe them
in favor of the plaintiff.  *Intri-Plex Tech., Inc. v. Crest
Group, Inc.*, 499 F.3d 1048, 1050 n.2 (9th Cir. 2007).  "The court
need not accept as true, however, allegations that contradict
facts that may be judicially noticed by the court."  *Shwarz v.*

*United States*, 234 F.3d 428, 435 (9th Cir. 2000)(citations omitted).  The court's reliance on judicially-noticed documents does not convert a motion to dismiss into a summary-judgment motion.  *Intri-Plex*, 499 F.3d at 1052.

## MOTION (#29) TO DISMISS FILED
## BY CANADA DEFENDANTS

Canada Defendants move to dismiss Plaintiffs' First Amended Complaint on the ground that this Court lacks subject-matter jurisdiction due to the arbitration clause in the RDA and FAs. In the alternative, Canada Defendants move to dismiss Claims 1-4 and 6 on the ground that they are barred by the statute of limitations and Claims 3, 8, 9, and 13 for failure to state a claim.

**I.    The Law**

The Supreme Court and the Ninth Circuit have held in federal cases involving diversity jurisdiction that federal substantive law governs the question of arbitrability.  *Moses v. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Republic of Nicaragua v. Standard Fruit Co.*, 937 F.2d 469, 474 (9th Cir. 1991).  The Federal Arbitration Act (FAA) creates federal substantive law regarding arbitration under the authority of the Interstate Commerce Clause and confers to federal courts the authority to compel arbitration.  *See* 9 U.S.C. §§ 3, 4.  *See also*

*Blue Cross of Cal. v. Anesthesia Care Assoc.,* 187 F.3d 1045, 1050 (9th Cir. 1999*); Republic of Nicaragua*, 937 F.2d at 475.  "[T]he central or 'primary' purpose of the FAA is to ensure that 'private agreements to arbitrate are enforced according to their terms.'"  *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp*., 130 S. Ct. 1758, 1773 (2010)(quoting *Volt Info. Serv., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ*., 489 U.S. 468, 479 (1989)).

## II.  Analysis

The parties do not dispute the RDA and FAs contain valid arbitration clauses.[1]  Indeed, as noted, the parties arbitrated these matters until US Defendants reported they could no longer pay their share of the costs.

The FAA provides in pertinent part:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.  The FAA further provides:

---

[1] At oral argument, Canada Defendants advised the Court that they agreed to arbitrate because of the breadth of the arbitration clauses in the FAs and RDA even though they were not signatories to the FAs or RDA.

11 - OPINION AND ORDER

> [The] party aggrieved by the alleged failure,
> neglect, or refusal of another to arbitrate under
> a written agreement for arbitration may petition
> [a] United States district court . . . for an
> order directing that such arbitration proceed in
> the manner provided for in such agreement.

9 U.S.C. § 4.

Plaintiffs assert Canada Defendants' failure to pay the US Defendants' portion of the arbitration costs constitutes failure, neglect, or refusal to arbitrate within the meaning of § 4 of the FAA, and, therefore, the Court has subject-matter jurisdiction to determine the parties' underlying claims.

Canada Defendants, on the other hand, assert they did not fail to pay their share of the arbitration costs, and, therefore, they did not breach either the parties' fee-sharing agreement or the agreement to arbitrate. Thus, Canada Defendants contend Plaintiffs' claims against them should be dismissed in order to arbitrate those claims.

The record reflects Canada Defendants did not fail to pay their share of the arbitration costs nor do Plaintiffs point to any evidence that establishes Canada Defendants failed to comply with their duties under the fee-sharing agreement. Moreover, Plaintiffs do not point to any evidence that establishes Canada Defendants agreed to pay US Defendants' share of the arbitration costs.

On this record, the Court concludes Canada Defendants did not breach the agreement to pay arbitration costs and Canada

12 - OPINION AND ORDER

Defendants have not failed, neglected, or refused to arbitrate this matter.  Plaintiffs claims against Canada Defendants, therefore, remain subject to arbitration.  Thus, the Court is required to "stay the trial of the action until . . . arbitration has been had in accordance with the terms of the agreement" pursuant to § 3 of the FAA.

Accordingly, the Court **DENIES** Canada Defendants' Motion to Dismiss Plaintiff's claims against them and **STAYS** Plaintiffs' claims against Canada Defendants until Plaintiffs and Canada Defendants arbitrate these claims in accordance with the terms of the FAs and RDA.


## MOTION (#31) TO DISMISS FILED BY US DEFENDANTS

US Defendants move to dismiss Plaintiffs' claims against them on the grounds that (1) this Court lacks subject-matter jurisdiction because Plaintiffs' claims are subject to arbitration, (2) Claims 1-12 are untimely pursuant to the provision of the RDA that limits the time in which Plaintiffs can bring those claims, and (3)  Claims 1-4 and 6 are barred by the applicable statute of limitations.

As noted, Plaintiffs do not dispute the RDA and FAs contain valid arbitration clauses.  According to Plaintiffs, the US Defendants' failure to pay their share of the arbitration costs

constitutes failure, neglect, or refusal to arbitrate within § 4 of the FAA, and, therefore, this Court has jurisdiction over Plaintiffs' claims.  US Defendants, however, assert whether their inability to pay arbitration costs constitutes failure, neglect, or refusal to arbitrate is an issue for the arbitrator to resolve rather than an issue for the Court, and, therefore, the Court should dismiss Plaintiffs' claims against US Defendants.

## I.    Nature of the Parties' Agreement

Plaintiffs assert US Defendants breached the arbitration agreement when they refused to pay their portion of the arbitration costs.  US Defendants assert, however, that the fee-sharing agreement was a collateral procedural agreement that did not amend the arbitration agreement, and, therefore, an arbitrator has exclusive jurisdiction to determine whether US Defendants' nonpayment of fees constitutes default, neglect, or refusal to arbitrate.  The Court agrees.

As US Defendants point out, the RDA and FAs require modification of any term or provision to be "by written instrument signed by all of the parties."  First Am. Compl., Ex. 1 at § 15.11; First Am. Compl., Ex. 2 at § 21.09 (FA may be modified "only upon execution of a written agreement between the parties.").  Here the record reflects the parties reached their fee-splitting agreement orally, and that agreement was noted in subsequent emails.  The record, however, does not reflect any

written, signed instrument regarding the apportionment of fees.
Moreover, the fee-sharing agreement was related to the
arbitration proceeding at issue here and to two other arbitration
proceedings brought by other franchisees against US Defendants.
The parties' agreement as to fee apportionment, therefore, did
not effectively modify, change, or amend the terms of the FAs or
the RDA.  The Court, therefore, concludes the fee-sharing
agreement was a collateral agreement between the parties.

## II.  Jurisdiction

The Supreme Court has explained an arbitrator's jurisdiction
as follows:

> In certain contexts, it is appropriate to presume
> that parties that enter into an arbitration
> agreement implicitly authorize the arbitrator to
> adopt such procedures as are necessary to give
> effect to the parties' agreement.  Thus, we have
> said that "'"procedural" questions which grow out
> of the dispute and bear on its final disposition'
> are presumptively not for the judge, but for an
> arbitrator, to decide."  *Howsam v. Dean Witter
> Reynolds, Inc.*, 537 U.S. 79, 84, 123 S. Ct. 588,
> 154 L. Ed. 2d 491 (2002)(quoting *John Wiley &
> Sons, Inc. v. Livingston*, 376 U.S. 543, 557, 84 S.
> Ct. 909, 11 L. Ed. 2d 898 (1964)).

*Stolt-Nielsen*, 130 S. Ct. at 1775.  The Supreme Court has held
"[t]he question whether the parties have submitted a particular
dispute to arbitration, *i.e.*, the 'question of arbitrability,' is
'an issue for judicial determination [u]nless the parties clearly
and unmistakably provide otherwise.'"  *Howsam*, 537 U.S. at 83
(quoting *AT&T Tech., Inc. v. Commc'n Workers*, 475 U.S. 643, 649

15 - OPINION AND ORDER

(1986)).  Nevertheless, the Court recognized

> [l]inguistically speaking, one might call any
> potentially dispositive gateway question a
> "question of arbitrability," for its answer will
> determine whether the underlying controversy will
> proceed to arbitration on the merits.  The Court's
> case law, however, makes clear that, for purposes
> of applying the interpretive rule, the phrase
> "question of arbitrability" has a far more limited
> scope.  *See* 514 U.S. at 942, 115 S. Ct. 1920.  The
> Court has found the phrase applicable in the kind
> of narrow circumstance where contracting parties
> would likely have expected a court to have decided
> the gateway matter, where they are not likely to
> have thought that they had agreed that an
> arbitrator would do so, and, consequently, where
> reference of the gateway dispute to the court
> avoids the risk of forcing parties to arbitrate a
> matter that they may well not have agreed to
> arbitrate.

*Id*. at 83-84.  The Court has held the following "gateway

disputes" raise "question[s] of arbitrability" to be decided by

the court:   whether the arbitration contract binds parties who

did not sign the agreement *(First Options of Chicago, Inc. v.

Kaplan*, 514 U.S. 938, 943-46 (1995)); whether an arbitration

agreement survives a corporate merger and binds the resulting

corporation *(John Wiley & Sons*, 376 U.S. at 546-47; whether an

arbitration clause in a binding contract applies to a particular

type of controversy *(AT&T Tech.*, 475 U.S. at 651-52); whether a

clause providing for arbitration of various "grievances" covers

claims for damages for breach of a no-strike agreement *(Atkinson

v. Sinclair Refining Co.*, 370 U.S. 238, 241-43 (1962)).

    On the other hand, the Supreme Court has held the following

issues do not raise "question[s] of arbitrability" and, therefore, are matters to be decided by the arbitrator:  whether the first two steps of a grievance procedure have been completed when those steps are prerequisites to arbitration (*John Wiley*, 376 U.S. at 557); whether "allegation[s] of waiver, delay, or [the like,] are defenses to arbitratbility *(Moses H. Cone Memorial Hospital*, 460 U.S. at 24-25).  In *Howsam*, the Court also noted

> the Revised Uniform Arbitration Act of 2000 (RUAA), seeking to "incorporate the holdings of the vast majority of state courts and the law that has developed under the [Federal Arbitration Act]," states that an "arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled."  RUAA § 6(c), and comment 2, 7 U.L.A. 12-13 (Supp. 2002).  And the comments add that "in the absence of an agreement to the contrary, issues of substantive arbitrability . . . are for a court to decide and issues of procedural arbitrability, *i.e.*, whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide."  *Id*. § 6, comment 2, 7 U.L.A., at 13 (emphasis added).

537 U.S. at 85.  The Court ultimately held whether the plaintiff brought a claim for arbitration within the limitations period of the contract at issue is "a matter presumptively for the arbitrator, not for the judge" because the "time limit rule closely resembles the gateway questions that this Court has found not to be 'questions of arbitrability.'"  *Id*.

Here the Court concludes whether US Defendants' inability to

continue to pay arbitration costs in accordance with the parties'
collateral agreement constitutes a failure, neglect, or refusal
to arbitrate under the parties' arbitration agreement is a
gateway dispute that is not an issue for the Court to decide.
This issue is similar to "allegation[s] of waiver, delay, or a
like defense to arbitrability" and to questions as to "whether
prerequisites such as time limits, notice, laches, estoppel, and
other conditions precedent to an obligation to arbitrate have
been met."

In addition, the record reflects the arbitration clause at
issue in the FAs and RDA is extremely broad.  As noted, the
clauses provide in pertinent part:

> [E]xcept for controversies, disputes, or claims
> related to or based on use of the Marks or the
> enforcement of non-competition provisions, . . .
> all controversies, disputes, or claims between
> [BJLP] and [its] affiliates, and Regional
> Developer's [sic] and its affiliates[] . . .
> arising out of or related to:  (1) this Agreement
> or any other agreement between Regional Developer
> and [BJLP]; (2) [BJLP's] relationship with
> Regional Developer; or (3) the validity of this
> Agreement or any other agreement between Regional
> Developer and [BJLP] must be submitted for binding
> arbitration to the American Arbitration
> Association.
>
> * * *
>
> Except for claims or controversies, disputes or
> claims related to or based on the Marks, . . .
> upon demand of either party, all controversies,
> disputes or claims between [BJLP] . . . and
> Franchisee . . . shall be submitted for
> arbitration to the Oregon office of the American
> Arbitration Association (AAA).

First Am. Compl., Ex. 1 at ¶ 14, Ex. 2 at ¶ 20.01.  Indeed, the
issue of a party's inability to pay its share of arbitration
costs is not the kind of issue the parties "would likely have
expected a court to . . . decide," one the parties were unlikely
"to have thought they had agreed . . . an arbitrator would"
decide, or one in which "reference of the [issue] to the court"
would force the "parties to arbitrate a matter that they may well
not have agreed to arbitrate."  *Howsam*, 537 U.S. at 83-84.

    Nonetheless Plaintiffs rely on *Sink v. Aden Enterprises*, 352
F.3d 1197 (9th Cir. 2003), to support their assertion that the
Court may decide Plaintiffs' claims rather than refer this matter
to arbitration.  *Sin*k, however, is distinguishable from this
case.

    In *Sink* the plaintiff brought an action in federal court
alleging the defendant breached his employment agreement.  The
district court stayed the action and referred the matter to
arbitration pursuant to the arbitration clause in the plaintiff's
employment agreement.  *Id.* at 1198.  Although the defendant was
required to pre-pay the costs of arbitration pursuant to the
employment agreement, the defendant failed to do so and failed to
inform the arbitration organization of its inability to pay by
the deadline.  The arbitrator granted the plaintiff's motion for
order of default, and the arbitration organization cancelled the
arbitration.

19 - OPINION AND ORDER

The plaintiff then filed motions in federal court to lift the stay pursuant to 9 U.S.C. § 3 and for default judgment pursuant to Federal Rule of Civil Procedure 55.  *Id*. at 1199. The court granted the motion to lift the stay and set a hearing. At the hearing, the defendant informed the court that it had obtained the money needed to pay the costs of arbitration and made an oral motion to refer the matter back to arbitration pursuant to 9 U.S.C. § 4.  *Id*.  The court denied the plaintiff's motion for entry of default judgment and denied the defendant's request to refer the matter back to arbitration on the ground that the defendant had defaulted in that proceeding and, therefore, had waived its right to arbitrate.  *Id*.  In affirming the order denying the defendant's request to refer the matter back to arbitration, the Ninth Circuit noted the district court did not err when it concluded the defendant defaulted in the arbitration proceeding because the arbitrator had reached the same conclusion when it granted the plaintiff's motion for default in the arbitration proceeding.  *Id*.  The court reasoned:

> [O]ur review of the FAA shows that it cannot sensibly be interpreted to require an order compelling arbitration here pursuant to 9 U.S.C. § 4. . . . [The defendant's] attempt to compel arbitration for a second time stumbles over § 3 of the FAA, which provides that before granting a stay of proceedings pending arbitration a court must determine . . . that "the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3.  Because the district court did not err in finding Aden to be in default of arbitration, § 3 precludes any attempt by [the

> defendant] again to stay district court
>
> proceedings pending a further reference to
> arbitration.

*Id*. at 1200.  Ultimately the Ninth Circuit concluded "a party to an arbitration agreement may not compel arbitration of claims under FAA § 4 where a prior default in arbitration of those claims precludes that party from obtaining a stay of litigation pending arbitration under § 3."  *Id*.

In the present matter, Plaintiffs did not move for an order of default in arbitration nor did an arbitrator have any opportunity to make any finding of default.  In addition, unlike in *Sink*, a collateral fee-sharing agreement is at issue here rather than the arbitration agreement itself.

On this record, the Court concludes the effect, if any, on the parties' arbitration agreement of US Defendants' inability to continue paying the costs of arbitration as required in a collateral fee-sharing agreement governing three arbitrations (*i.e.*, whether US Defendants' inability to continue to pay its share of arbitration costs constitutes failure, neglect, or refusal to arbitrate in violation of the arbitration agreement) is an issue for the arbitrator rather than the Court.  Thus, pursuant to § 3 of the FAA, the Court is authorized to "stay the trial of the action until . . . arbitration has been had in accordance with the terms of the agreement."

Accordingly, the Court **DENIES** US Defendants' Motion to

21 - OPINION AND ORDER

Dismiss Plaintiff's claims against US Defendants and **STAYS**
Plaintiffs' claims against US Defendants until Plaintiffs and US
Defendants arbitrate these claims or until an arbitrator decides
whether US Defendants' inability to continue to pay its share of
arbitration costs constitutes failure, neglect, or refusal to
arbitrate in violation of the arbitration agreement.

<u>**CONCLUSION**</u>

For these reasons, the Court **DENIES** the Motion (#29) to
Dismiss of Canada Defendants AW Holdings Corporation and Dale
Wishewan and **STAYS** Plaintiffs' claims against these Defendants
pending arbitration of these claims in accordance with the terms
of the FAs and RDA.

The Court also **DENIES** the Motion (#31) to Dismiss by US
Defendants Booster Juice Limited Partnership, AW Limited
Partnership, AW Holdings, Inc., and Jonathan Amack and **STAYS**
Plaintiffs' claims against these Defendants pending arbitration
of Plaintiffs' claims against these Defendants or until an
arbitrator determines US Defendants' inability to continue to pay
its share of arbitration costs constitutes failure, neglect, or
refusal to arbitrate in violation of the arbitration agreement.

The Court **DIRECTS** the parties to file joint periodic status
reports every 90 days beginning November 1, 2010, or at any time

22 - OPINION AND ORDER

intervening events warrant the Court's attention.

IT IS SO ORDERED.

DATED this 30th day of July, 2010.


                                        /s/
                                        ANNA J. BROWN
                                        United States


23 - OPINION AND ORDER